# No. 24-20332

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Golden Bear Insurance Company,
*Plaintiff – Appellee*
v.
34th S&S, L.L.C., doing business as Concrete Cowboy; Kacy Clemens; Daniel
Joseph Wierck; Conner Capel,
*Defendants - Appellants*

**On Appeal from**
United States District Court for the Southern District of Texas
4:23-CV-1933

## BRIEF OF APPELLEE
## GOLDEN BEAR INSURANCE COMPANY

SUBMITTED BY:
George S. McCall
Sondra S. Sylva
Erin M. Turner
PHELPS DUNBAR, L.L.P.
2102 E. State Highway 114
Southlake, TX 76092
Telephone: (817) 488-3134
Facsimile: (817) 488-3214
george.mccall@phelps.com
sondra.sylva@phelps.com
erin.turner@phelps.com

*Counsel for Plaintiff-Appellee*

No. 24-20332

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Golden Bear Insurance Company,
*Plaintiff – Appellee*
v.
34th S&S, L.L.C., doing business as Concrete Cowboy; Kacy Clemens; Daniel
Joseph Wierck; Conner Capel,
*Defendants - Appellants*

**On Appeal from**
United States District Court for the Southern District of Texas
4:23-CV-1933

## CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Plaintiff-Appellee:**

Golden Bear Insurance Company

**Counsel for Plaintiff-Appellee:**

George S. McCall
Sondra S. Sylva
Erin M. Turner
**Phelps Dunbar LLP**

**Defendants-Appellants:**

34th S&S, L.L.C.,
d/b/a Concrete Cowboy;
Daniel Joseph Wierck;
Kacy Clemens;
Conner Capel

**Other Interested Parties:**

Texas Trial Lawyers Association

**Counsel for Defendants – Appellants:**

Randall O. Sorrels
H. Victor Thomas
Dylan B. Russell
**Sorrels Law**

**Counsel for Interested Parties:**

John Gsanger
**The Ammons Law Firm**
Henry Moore
Jayme Bomben
**Moore & Bomben PLLC**
Kevin Camp
**Roven Camp PLLC**

*/s/ George S. McCall*
George S. McCall
*Attorney of Record for Plaintiffs-Appellees*

## STATEMENT CONCERNING ORAL ARGUMENT

Because the undisputed facts and legal arguments are adequately presented in the briefs, and because this appeal involves the straightforward application of federal procedure and Texas law, Appellee Golden Bear Insurance Company believes that oral argument is not warranted or necessary. Nevertheless, to the extent this Court determines that oral argument would be helpful to illuminate or elaborate on any of the issues presented, Appellee would be eager to present such argument.

# TABLE OF CONTENTS

Page(s)

CERTIFICATE OF INTERESTED PARTIES.........................................................ii

STATEMENT ON ORAL ARGUMENT................................................................iv

TABLE OF AUTHORITIES..................................................................................vii

STATEMENT OF THE ISSUES ...........................................................................1

STATEMENT OF THE CASE.................................................................................2

    I.      The Insurance Policy ...............................................................................2

    II.     The Underlying Lawsuit...........................................................................3

    III.    This Coverage Action ..............................................................................4

SUMMARY OF ARGUMENT................................................................................6

ARGUMENT ..........................................................................................................8

    I.      Subject Matter Jurisdiction Exists...........................................................8

    II.     The District Court Properly Denied Appellants' Rule 12(c) Motion ......8

    1.   Golden Bear's Complaint sought a declaration as to its liability under the Policy - an unquestionably proper and typical use of the Declaratory Judgment Act............................................................................................................9

    2.   Golden Bear properly sought a declaration as to whether the Demand Letter was a valid *Stowers* demand, but the propriety of that request is immaterial to this Court's analysis ...................................................................................17

III.     The District Court Did Not Abuse Its Discretion In Deciding
         This Case ...................................................................................................22

IV.     The District Court Properly Held That The Demand Did Not State A
        Clear And Unambiguous Sum Certain .....................................................27

V.      Because The District Court Did Not Rule On Golden Bear's Motion
        Regarding Whether A Reasonable Insurer Would Have Accepted The
        Demand, This Court Should Not Decide The Issue ...............................34

CONCLUSION .......................................................................................................35

CERTIFICATE OF SERVICE ..............................................................................36

CERTIFICATE OF COMPLIANCE ....................................................................37

# TABLE OF AUTHORITIES

**Cases**                                                      **Page(s)**

*Allstate Fire and Cas. Ins. Co. v. Love,*
    71 F.4th 348 (5th Cir. 2023).........................................................................14, 15

*American Bankers Life Assurance Co. of Fl. v. Overton,*
    128 Fed. Appx. 399 (5th Cir. 2005)....................................................................24

*American Eurocopter LLC v. AIG Aviation, Inc.,*
    4:09-CV-137Y, 2009 WL 10705171 (June 19, 2009).......................................20

*American Guar. and Liability Ins. Co. v. ACE Am. Ins. Co.,*
    990 F.3d (5th Cir. 2021) .....................................................................................28

*American Ins. Co. v. Assicurazioni Generali SpA, 228 F.3d 409, 2000*
    WL 1056143 at *1 (5th Cir. July 24, 2000).......................................................29

*American Physicians American Ins. v. Garcia,*
    876 S.W.2d 842 (Tex. 1994) ...............................................................28, 29, 31

*Brillhart v. Excess Ins. Co. of America,*
    316 U.S. 491 (1942) .............................................................................1, 16, 19

*Bryant v. Optimized Process Designs, LLC,*
    No. 4:23-cv-03275, 2024 WL 844933 (S.D. Tex. Feb 26, 2024) ......................22

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)............................................................................................27

*Colorado River Water Conservation District v. United States,*
    424 U.S. 800 (1976).......................................................................................16,

*In re Dana Corp.,*
    138 S.W.3d 298 (Tex. 2004) .............................................................................33

*Davidson v. Fairchild,*
    882 F.3d 180 (5th Cir. 2018) .............................................................................27

*Doe v. MySpace, Inc.,*
    528 F.3d 413 (5th Cir. 2008) ...............................................................................9

*Ex-Im Freezers, J.V. v. Appalachin Ins. Co.*,
53 F.3d 1281, 1995 WL 295926 (5th Cir. Apr. 26, 1995)..............................21, 22

*In re Farmers Texas County Mut. Ins. Co.*,
621 S.W.3d 261 (Tex. 2021) ...........................................................................13

*Forsyth v. Barr*,
28 F.3d 1527 (5th Cir. 1994) ...........................................................................30

*Frye v. Anadarko Petroleum Corp.*,
953 F.3d 285 (5th Cir. 2019) .............................................................................9

*G.A. Stowers Furniture Co. v. American Indem. Co.*,
15 S.W.2d 544 (Tex. Comm'n App. 1929 holding approved) ..................*passim*

*Harrison v. Brookhaven School District*,
82 F.4th 427 (5th Cir. 2023)................................................................................8

*Harvey v. Grey Wolf Drilling Co.*,
542 F.3d 1077 (5th Cir. 2008) .............................................................................8

*Humphries v. Elliott Co.*,
760 F.3d 414 (5th Cir. 2014) .............................................................................34

*Ironshore Specialty Ins. Co. v. Tractor Supply Co.*,
624 Fed. Appx. 159 (5th Cir. 2015).................................................................9, 15

*Lexington Ins. Co. v. West Star Transport*,
No. 5:16-cv-179-C, 2017 WL 3867770 (N.D. Tex. May 2, 2017) ...................26

*MH Sub 1, LLC v. FPK Services, LLC*
1:18- cv-834-RP, 2019 WL 13138139 (Jun. 21, 2019)......................................20

*Nationwide Mut. Ins. Co. v. Haffley*,
78 Fed. Appx. 348 (5th Cir. 2003)...................................................................14

*New England Ins. Co. v. Barnett*,
561 F.3d 392 (5th Cir. 2009) .......................................................................16, 17

*OneBeacon Insurance Co. v. T. Wade Welch & Assoc.*,
841 F.3d 669 (5th Cir. 2016) .................................................................13, 14, 29

*Orix Credit Alliance, Inc. v. Wolfe*,
  212 F.3d 891 (5th Cir. 2000) ........................................................10, 16

*Serger v. Yorkshire Ins. Co., Ltd.*,
  503 S.W.3d 388 (Tex. 2016) .......................................................28, 29

*Shanks v. AlliedSignal, Inc.*
  169 F.3d 988 (5th Cir. 1999) ..............................................................34

*Sherwin Williams Co. v. Holmes County*,
  343 F.3d 383 (5th Cir. 2003) .................................9, 16, 21, 24, 25

*Signad, Inc. v. City of Sugar Land*,
  753 F.2d 1338 (5th Cir. 1985) ...........................................................17

*Singleton v. Wulff*,
  428 U.S. 106 (2014)............................................................................34

*Southwind Aviation Inc. v. Bergen Aviation, Inc.*,
  23 F.3d 948 (5th Cir. 1994) ................................................................17

*St. Paul Fire and Marine Ins. Co. v. Convalescent Svcs.*,
  193 F.3d 340 (5th Cir. 1999) ..............................................................14

*St. Paul Ins. Co. v. Trejo*,
  39 F.3d 585 (5th Cir. 1994) .........................................................23, 24

*Torch, Inc. v. LeBlanc*,
  947 F.2d 193 (5th Cir. 1991) ..............................................................20

*Travelers Indem. Co. v. Citgo Petroleum Corp.*,
  166 F.3d 761 (5th Cir. 1999) ..............................................................14

*Twin City Fire Ins. Co. v. Carpenter*,
  No. 3:21-CV-1077-G, 2021 WL 3172269
  (N.D. Tex. July 26, 2021) ...................................................................26

*Voest-Alpine Trading USA Corp. v. Bank of China*,
  142 F.3d 887 (5th Cir. 1998) ................................................................9

*Westchester Fire Ins. Co. v. Admiral Ins. Co.*
  152 S.W.3d 172, 192 (Tex. App.—Fort Worth 2004, pet. denied)..............31, 32

*Wilton v. Seven Falls Co.*,
   515 U.S. 277 (1995)...............................................................22, 23, 26

*Wisznia Co., Inc. v. General Star Indem. Co.*,
   759 F.3d 446 (5th Cir. 2014) ............................................................26

**Statutes**

28 U.S.C. § 1332(a)(1)..............................................................................8

28 U.S.C. § 2201(a) ...................................................................................9

**Rules**

Fed. R. Civ. P. 12(b)(6).............................................................................8

Fed. R. Civ. P. 12(c)...................................................................................8

Fed. R. Civ. P. 56(a) and (c)(1).................................................................27

To the Honorable U.S. Court of Appeals for the Fifth Circuit:

Plaintiff-Appellee Golden Bear Insurance Company ("Golden Bear") files its principal appellate brief in response to Defendant-Appellants' opening brief. Golden Bear submits that the District Court correctly denied Appellants' Motion to Dismiss and/or Stay and Motion for Judgment on the Pleadings and correctly granted Golden Bear's Motion for Summary Judgment. The arguments presented on appeal are virtually indistinguishable from those considered and correctly ruled on by the District Court. Golden Bear respectfully submits that this Honorable Court should summarily affirm.

## STATEMENT OF THE ISSUES

1. Did the District Court err in holding that Golden Bear's claims for declarations that a) the limits of liability of the insurance policy had been exhausted, and Golden Bear had no further duty to indemnify its insureds under the Policy, and b) that Golden Bear owed no further duty to indemnify Appellants after the exhaustion of the limits of liability, stated valid claims for relief?

2. Did the District Court abuse its discretion in not staying or dismissing the case under the *Brillhart* doctrine, when Appellants failed to articulate any factual basis for abstention, other than the mere existence of a later-filed state court action?

3. Did the District Court properly grant Golden Bear's Motion for Summary Judgment on the issue of liability under *G.A. Stowers Furniture Co. v.*

*American Indem. Co.*, 15 S.W.2d 544, 547-48 (Tex. Comm'n App. 1929, holding approved), ("*Stowers*") when the settlement demand was for "all policy limits from any and all insurance contracts" rather than a sum certain or the phrase "the policy limits"?

4.      Should this Court issue an advisory opinion regarding the merits on one of Golden Bear's other grounds for summary judgment, when the District Court did not reach a decision on the merits?

## STATEMENT OF THE CASE

### I.      The Insurance Policy

Golden Bear issued Commercial General Liability Policy No. GBL 10972 to 34th S&S, LLC dba: Concrete Cowboy Houston, for the September 28, 2018, to September 28, 2019, policy period (the "Policy"). ROA.17-73. The Policy contains different coverage parts: the Commercial General Liability Coverage part, the Liquor Liability Coverage part, and Limited Assault & Battery Coverage. ROA.17; ROA.24, ROA.68, ROA.84.

As relevant here, the Limited Assault and Battery Coverage, the Commercial General Liability Coverage part and the Liquor Liability Coverage part are each subject to different policy terms, conditions and exclusions. ROA.68-83, ROA.84-89, ROA.23-24. The Liquor Liability Coverage part and the Limited Assault and Battery Coverage each have aggregate limits of liability of $1 million; the

Commercial General Liability Coverage part has aggregate limits of liability of $2 million. ROA.17, ROA.24. Under the General Liability Coverage part and the Liquor Liability Coverage part, defense costs do not erode the limits of liability; under the Limited Assault and Battery Coverage, defense costs do erode the limits of liability. ROA.75, ROA.85, ROA.24.

## II.    The Underlying Lawsuit

On January 30, 2019, Kacy Clemens and Conner Capel filed a lawsuit (the "Underlying Lawsuit") against 34th S&S, LLC d/b/a Concrete Cowboy ("Concrete Cowboy"). ROA.347-356. In the original complaint in the Underlying Lawsuit, Clemens and Capel alleged that they had suffered injuries on January 1, 2019, as the result of an altercation at Concrete Cowboy, a Houston area restaurant and bar. ROA.349-351.

Concrete Cowboy was not served in the Underlying Lawsuit until April 2019. ROA.437-438. Concrete Cowboy timely filed an Answer in the Underlying Lawsuit on May 16, 2019. ROA.441-446.

On October 11, 2019, counsel for Clemens, Capel, and another plaintiff sent a letter to counsel for Concrete Cowboy, which purported to be a *Stowers* demand (the "Demand Letter"). ROA.453-457. In that letter, counsel stated, "We propose to release your client fully in exchange for the payment of all policy limits of any and all insurance contracts." ROA.456. On October 21, 2019, Golden Bear rejected the

settlement demand, noting it was not a proper *Stowers* demand. ROA.459-460. Daniel Wierck, an employee and co-owner of Concrete Cowboy, was later added as a defendant in the Underlying Lawsuit. ROA.476.

The claims of Clemens and Capel were ultimately tried to a jury, and a final judgment was entered by the trial court on April 26, 2021. ROA.642-648. In September 2022, Concrete Cowboy and Wierck entered into partial assignments with Clemens and Capel, pursuant to which Concrete Cowboy and Wierck assigned certain rights under the Policy in exchange for an agreement that Clemens and Capel would not execute on the judgment. ROA.516-556.

## III.   This Coverage Action

On May 25, 2023, Golden Bear filed its declaratory judgment action, seeking declarations that (1) the limits of liability of the Policy had been exhausted, and Golden Bear had no further duty to indemnify its insureds; and (2) because it had never been presented with a demand within policy limits Golden Bear owed no duty to indemnify the judgment creditors under *Stowers*. ROA.7-14.

On June 22, 2023, Concrete Cowboy, Clemens, Capel and Wierck (collectively, "Appellants") filed an action in the District Court of Harris County, Texas (the "State Court Lawsuit"), asserting various claims against Golden Bear as

well as legal malpractice claims against one of the attorneys who represented Concrete Cowboy and Wierck in the Underlying Lawsuit. ROA.135-151.

On June 22, 2023, Appellants filed a Motion to Dismiss or Stay Golden Bear's declaratory judgment action. ROA.113-123. The motion was denied on July 18, 2023. ROA.168.

On July 28, 2023, Appellants filed an Answer with counterclaims. ROA.169-183. Among other things, Appellants asserted a counterclaim for "Golden Bear's Breach of its *Stowers* Duty." ROA.179.

On February 29, 2024, Golden Bear filed a Motion for Summary Judgment on the *Stowers* claim. ROA.327-342. That same date, Golden Bear filed a separate Motion for Summary Judgment on Appellants' other counterclaims. ROA.501-513.

On March 1, 2024, Appellants filed a Motion for Judgment on the Pleadings. ROA.559-569. On March 4, 2024, Appellants filed an opposed Motion to Voluntarily Dismiss its counterclaims without prejudice. ROA.599-603.

On June 26, 2024, after the motions were fully briefed, the District Court entered an order granting Golden Bear's Motion for Summary Judgment on the *Stowers* claim and holding that Golden Bear had no further duty to indemnify Appellants. ROA.703-717. The District Court also granted Appellants' Motion to

Dismiss their counterclaims alleging violations of the Texas Insurance Code and Deceptive Trade Practices Act. ROA.715.

## SUMMARY OF ARGUMENT

Contrary to Appellants' arguments, this is a simple insurance action about whether Golden Bear had any obligation to pay more than it has already paid in connection with the Underlying Lawsuit, whether under the terms of the Policy itself or as extra-contractual damages.

The District Court did not err in denying Appellants' Motion for Judgment on the Pleadings. Golden Bear sought two declarations: first, that the Policy's applicable limits of liability had been exhausted, and second, that the Demand Letter was not a valid demand within policy limits as required by *Stowers*. The District Court held that Golden Bear properly sought to establish its duties under the Policy and that Golden Bear could seek a declaration that the Demand Letter was not a valid demand that triggered duties under *Stowers*. Each of these decisions was correct. Even if the District Court erred in making the second determination, however, under well-established Fifth Circuit law an insurer may properly seek a declaration as to its liability under a policy of insurance when it faces potential *Stowers* liability. And the *Stowers* issue was before the Court in any event, because Appellants filed a counterclaim for breach of the *Stowers* duty. The District Court therefore properly denied Appellants' motion.

The District Court did not abuse its discretion in denying Appellants' Motion to Dismiss or Stay. Appellants argued solely that Appellee filed this action in anticipation of Appellants' state court action and, therefore, the District Court must abstain. Appellants presented no evidence that Appellee's filing constituted improper forum shopping, however, and could not, as the cases were filed in the same city, both courts would apply the same law, and there were no novel state law issues. The District Court did not abuse its discretion in deciding not to abstain.

Finally, the District Court properly held, under long-standing Texas law, that the Demand Letter did not meet the requirements of a *Stowers* demand. To trigger an insurer's obligation under *Stowers*, a demand must state a clear and unambiguous sum certain within policy limits. Here, the Demand Letter sought "payment of all policy limits of any and all insurance contracts." ROA.456. As the District Court properly held, this demand was not clear and unambiguous, as it did not "provide any specificity regarding either Golden Bear's Policy, or the actual amount left within the Policy itself…" Appellants argued that the phrase used in the Demand Letter was the same as "the policy limits." The District Court correctly held that these phrases are not the same. The District Court properly rejected Appellants' attempts to alter the language of the Demand Letter. This was not a novel or complicated interpretation of state law; rather it was based on the plain language of

the Demand Letter from Clemens and Capel. The District Court's judgment should be affirmed.

## ARGUMENT

### I.    Subject Matter Jurisdiction Exists

This Court requested that the Parties brief the issue of subject matter jurisdiction. This Court has jurisdiction under 28 U.S.C. § 1332(a)(1) because there is complete diversity between the parties and the amount in controversy exceeded $75,000. Golden Bear is a California corporation with its principal place of business in California, and is therefore a citizen of California. ROA.8. Individual Defendants Mr. Wierck, Mr. Capel and Mr. Clemens are each citizens of Texas. ROA.8; *see also*, Appellants' Opening Brief at 11. For the purposes of diversity jurisdiction, the citizenship of an LLC is determined by the citizenship of its members. *See, e.g.*, *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079-80 (5th Cir. 2008). As set forth in Appellants' Opening Brief, Concrete Cowboy has three members, Mr. Wierck, Jonathan Valz, and Federico Taylor, all of whom are citizens of Texas. Thus, complete diversity exists among the Parties.

### II.    The District Court Properly Denied Appellants' Rule 12(c) Motion

This Court reviews the District Court's ruling on a Rule 12(c) motion *de novo*. *Harrison v. Brookhaven School District*, 82 F.4th 427, 429 (5th Cir. 2023). A 12(c) motion is subject to the same standard as that of a motion for dismissal under Rule

12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). The Court must determine "whether, in the light most favorable to the plaintiff the complaint states a valid claim for relief." *Id.* Courts may review the contents of the pleadings and exhibits attached to the pleadings. *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 888 n.4 (5th Cir. 1998).

1. **Golden Bear's Complaint sought a declaration as to its liability under the Policy - an unquestionably proper and typical use of the Declaratory Judgment Act**

Appellants argue that the District Court erred in denying their Motion for Judgment on the Pleadings, because "Golden Bear's Complaint, both expressly and in effect, asked the District Court for a declaratory judgment that Golden Bear has no liability for Appellants' negligence based *Stowers* claim to recover part of the judgment in excess of Policy limits." Appellants' Brief at 24. This ignores the plain language of the Complaint and the Policy, which was attached as an exhibit to the Complaint.

The Declaratory Judgment Act allows any court of the United States to "declare the rights or other legal relations of any interested party." 28 U.S.C. § 2201(a); *see also Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 293-94 (5th Cir. 2019). A proper purpose of the Declaratory Judgment Act "is to allow potential defendants to resolve a dispute without waiting to be sued or until the statute of limitations expires." *Ironshore Specialty Ins. Co. v. Tractor Supply Co.*, 624 Fed.

Appx. 159 (5th Cir. 2015) (quoting *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 397 (5th Cir. 2003)).

When considering whether to dismiss a declaratory judgment action, courts engage in a three-part test. *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). Courts must determine (1) whether an actual controversy exists between the parties such that the claim is ripe for adjudication; (2) whether the court has the authority to grant declaratory relief in the case presented; and (3) whether to exercise its discretion to hear the action. *Id.*

There is no question that Golden Bear's Complaint alleges that an actual controversy exists that is ripe for adjudication regarding its liability under the Policy. In its Complaint, Golden Bear alleges, among other things, that the Assault and Battery Coverage was the applicable coverage part, and that "The Combined Assault & Battery Aggregate Limit is the most Golden Bear will pay for coverage regardless of the number of 'claims' or 'suit' brought against you arising out of more than one 'occurrence' and/or 'common cause'". ROA.9-10. The Policy, a copy of which was attached to Golden Bear's Complaint, contains three separate coverage parts: the Commercial General Liability Coverage part, the Liquor Liability Coverage part, and the Limited Assault and Battery Coverage. The amount and operation of the limits of liability under the three coverage parts are not identical—two of the coverage parts have aggregate limits of liability of $1 million, while the other has

aggregate limits of liability of $2 million. Under the Limited Assault and Battery Coverage, defense costs erode limits; under the other coverage parts defense costs do not erode limits. ROA.68, ROA.75, ROA.84, ROA.85, ROA.24-25.

Golden Bear further alleges that "Golden Bear has no duty to defend or indemnity [sic] or otherwise resolve any claim(s) pending against the insureds after exhaustion of the applicable limit." ROA.10. The Complaint also alleges that "Concrete Cowboy and Wierck have sought indemnification under the Policy for the judgment entered in the Underlying Lawsuit. While Golden Bear does not dispute that indemnity coverage is owed, the amount of indemnity coverage to which the insureds are entitled is a matter of contention among all of the parties to the lawsuit." ROA.11.

Count One of Golden Bear's Complaint is captioned "Request for Declaratory Relief – Eroding Available Policy Limits." ROA.11. This Count incorporates all prior allegations, and further alleges "The limits of coverage available to satisfy the final judgment are eroded by payment of defense fees and expenses" and that Golden Bear had "tendered the balance of the policy limits to Clemens and Capel exhausting the available policy limits." ROA.12. Count One of the Complaint makes no reference to a demand under *Stowers*. Moreover, in its prayer for relief, Golden Bear requested that the District Court "determine and adjudicate the rights and liabilities of the parties with respect to the Policy." ROA.13. Golden Bear then sought

declarations that it had no further duty to indemnify Concrete Cowboy or Wierck and that it had no duty to pay Clemens and Capel sums in excess of the "policy limits that were tendered to Clemens and Capel." ROA.13. Construing this count in the light most favorable to Golden Bear, Golden Bear sought a declaration that the Limited Assault and Battery Coverage applies to the claim, that the limits of liability had been eroded by defense costs, and that Golden Bear's tender of the balance of the policy limits after considering the erosion of limits exhausted the Policy.

This is what Golden Bear argued below, in response to Appellants' initial Motion to Dismiss and Appellants' Motion for Judgment on the Pleadings. In its opposition to the initial Motion to Dismiss, Golden Bear argued that it sought "a declaration as to its liability under the Policy based on the applicable policy limit." ROA.163. Golden Bear further argued that its claims were "limited to the four-corners of the Policy document." ROA.163. A declaration as to *Stowers* liability would not be limited to the four corners of the Policy document. In response to Appellants' Motion for Judgment on the Pleadings, Golden Bear again argued that it "seeks a declaration that it exhausted its policy limits. . ." ROA.660. In rejecting Appellants' arguments in support of dismissal and finding Golden Bear's request for declaratory judgment was appropriate, the District Court noted that "Golden Bear contends it merely seeks to establish its obligations to indemnify their insureds . . ." ROA.711.

Under *Stowers*, when an insurer breaches its common-law duty to settle claims against its insureds when reasonably prudent to do so and that breach results in a verdict in excess of limits, the insurer is liable to pay the amount in excess of the limits of liability. *See*, *e.g.*, *In re Farmers Texas County Mut. Ins. Co.*, 621 S.W.3d 261, 267 (Tex. 2021). As Golden Bear specifically alleged, the amount of indemnity coverage available under the Policy was in dispute. Thus, Golden Bear alleged that an actual controversy existed as to the amount of coverage available under the Policy. To issue a declaration that Golden Bear "has no further duty to further indemnify Concrete Cowboy and/Wierck," would require a determination that the Policy was exhausted by prior payments, which in turn would require determinations of which coverage part of the Policy applies; the "applicable policy limits" and whether the payment of defense costs erodes that limit. Such a declaration of an insurer's obligations under the Policy is a common and proper use of the Declaratory Judgment Act. *See, e.g., OneBeacon Insurance Co. v. T. Wade Welch & Assoc.*, 841 F.3d 669, 674 (5th Cir. 2016) (declaratory judgment brought by insurer seeking declaration of liability under policy in light of excess verdict). The fact that Golden Bear sought a declaration as to the exhaustion of the limits of liability under the Policy is determinative here.

Moreover, the mere fact that an insurer faces a demand in excess of the policy limits does not eliminate the ability of an insurer to assert claims under the

Declaratory Judgment Act. The Fifth Circuit has recognized that insurers may properly use the Declaratory Judgment Act to determine duties to indemnify under a policy, even in the wake of an excess verdict and potential *Stowers* claim. *See, e.g.*, *Allstate Fire and Cas. Ins. Co. v. Love*, 71 F.4th 348, 350 (5th Cir. 2023) (declaratory judgment action seeking declaration that there was no duty to indemnify after excess verdict). The Fifth Circuit has also ruled on a number of cases that involve a declaratory judgment action brought by an insurer and a counterclaim that the insurer breached its obligations under *Stowers*. *See, e.g., T. Wade Welch & Assoc.*, 841 F.3d at 674 (declaratory judgment brought by insurer seeking declaration of liability under policy in light of excess verdict); *Nationwide Mut. Ins. Co. v. Haffley,* 78 Fed. Appx. 348, 349-50 (5th Cir. 2003) (affirming underlying decision in declaratory judgment action brought by insurer to determine duties under policy, when defendant/judgment creditor asserted *Stowers* counterclaim); *Travelers Indem. Co. v. Citgo Petroleum Corp.*, 166 F.3d 761, 764 (5th Cir. 1999) (affirming grant of declaratory judgment holding that insurer had no *Stowers* liability when it settled claims against some insureds and exhausted the limits of liability); *St. Paul Fire and Marine Ins. Co. v. Convalescent Svcs*., 193 F.3d 340, 342 (5th Cir. 1999) (insurer sought declaration as to coverage for punitive damages; court decided on a motion for judgment on the pleadings that demand did not meet the requirements of *Stowers*, and insurer therefore could not be liable for punitive damages portion of judgment).

In fact, under Fifth Circuit precedent, an insurer seeking a declaration as to its obligations under a policy of insurance can establish that it meets the jurisdictional amount required for diversity jurisdiction to exist based on an excess verdict when an insurer faces a possible *Stowers* claim, even if the *Stowers* claim is not brought before the Court. *Love,* 71 F.4th at 350. Based on the decision in *Love*, it is clear that the Fifth Circuit continues to permit an insurer to seek a declaration that it owes no duty to indemnify its insured and/or its insured's judgment creditor under its policy, even in the face of a potential *Stowers* claim.

Construed in the light most favorable to Golden Bear, it is clear Golden Bear properly sought a declaration of its liability to Appellants under the Policy. Golden Bear alleged that a dispute existed as to the amount of indemnity available under the Policy. Thus, Golden Bear properly asserted that an active controversy existed between the parties, and that the dispute was ripe for adjudication. Because an adjudication of an insurer's obligations under a policy of an insurance is unquestionably a proper use of the Declaratory Judgment Act, the District Court properly denied Appellants' Motion for Judgment on the Pleadings. *See Ironshore Specialty Ins. Co. v. Tractor Supply Co.*, 624 Fed. Appx. 159, 163 (5th Cir. 2015).

At the time Golden Bear filed its Complaint, there was no pending state court action. Because Golden Bear filed its Complaint before Appellants, the District

Court had the authority to decide issues relating to the application of the Policy. *See, e.g.*, *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 388 n.1 (5th Cir. 2003).

Under the factors set forth in *Orix*, in deciding the motion for judgment on the pleadings, the District Court next had to consider whether to decide the case or abstain. 212 F.3d at 895. By the time Appellants filed their Motion for Judgment on the Pleadings, Appellants had filed an Answer in which they asserted various counterclaims for monetary damages. In other words, Appellants had asserted coercive counterclaims. When an action brought pursuant to the Declaratory Judgment Act includes coercive claims, including coercive counterclaims, the District Court must use the test set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976). *See, e.g., New England Ins. Co. v. Barnett*, 561 F.3d 392, 397 (5th Cir. 2009). The are only two exceptions to the applicability of the *Colorado River* standard when an action contains any claim for coercive relief: when the coercive relief sought is frivolous or when the coercive claim was made solely to avoid the application of the standard set forth in *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942). *Barnett*, 561 F.3d at 397. Here, Appellants' claims were not frivolous, and it is clear they were not made to avoid the application of *Brillhart*.

Under the *Colorado River* standard, a district court still has discretion to abstain from hearing a declaratory judgment action, but "such discretion is narrowly

circumscribed by – as the Court stated in *Colorado River* – their 'virtually unflagging obligation . . .to exercise the jurisdiction given them.'" *Southwind Aviation Inc. v. Bergen Aviation, Inc.*, 23 F.3d 948, 951 (5th Cir. 1994). Abstention under *Colorado River* is governed by the "exceptional circumstances" standard. *Barnett,* 561 F.3d at 592. Here, the District Court did not grant Appellants' motion or decide to abstain. Had it reached the issue, Appellants could not have demonstrated that exceptional circumstances did exist.

Under the *Colorado River* standard, courts look at factors such as (a) the inconvenience of the federal forum; (b) the desirability of avoiding piecemeal litigation; and (c) the order in which jurisdiction was obtained by the concurrent forums. *Signad, Inc. v. City of Sugar Land*, 753 F.2d 1338, 1340 (5th Cir. 1985). Here, the federal court proceedings and the state court proceedings were in the same city; discovery was still ongoing in the state court action but had closed in this action; and this case was filed first. Under these circumstances, the District Court would have abused its discretion had it decided to abstain.

2. **Golden Bear properly sought a declaration as to whether the Demand Letter was a valid *Stowers* demand, but the propriety of that request is immaterial to this Court's analysis**

Because Golden Bear's Complaint properly asserts a claim under the Declaratory Judgment Act seeking a declaration of its obligations under the Policy, this Court can affirm the District Court's ruling on Appellants' Motion for Judgment

on the Pleadings without addressing Appellants' arguments regarding Golden Bear's Second Count. If this Court chooses to address the propriety of Golden Bear's Second Count, Golden Bear asserts that this was also proper.

In its Complaint, Golden Bear also sought a declaration that it had never been presented with a valid *Stowers* demand, and thus could not owe extra-contractual amounts to the Appellants. Golden Bear did not seek a declaration that it had not committed negligence in rejecting the demand; rather it sought a declaration as to whether the Demand Letter was a valid demand in the first instance. In other words, Golden Bear sought a declaration as to whether the Demand Letter gave rise to potential liability outside the Policy. Golden Bear specifically alleged that Appellants were demanding amounts outside the Policy limits. ROA.11. Golden Bear further alleged that, "At no time did Clemens and Capel either individually or together, make a settlement demand upon Concrete Cowboy and/or Wierck which complied with the requirements of *Stowers*." ROA.12. Thus, Golden Bear asserted that a dispute existed among the parties that was ripe for adjudication.

If the District Court had held that the Demand Letter was a valid *Stowers* demand and Appellants had not filed their counterclaim for breach of the *Stowers* duty, the parties would still have had to litigate issues of whether Golden Bear was negligent in rejecting that demand. Appellants did file their counterclaims, however, well before they filed the Motion for Judgment on the Pleadings. R.179-180. In other

words, Appellants themselves put the question of Golden Bear's liability under *Stowers* at issue, and the District Court could properly decide the entire issue.

Ignoring the fact that they themselves put the issue of Golden Bear's liability before the District Court well before the District Court decided the issue, Appellants argue that, because Golden Bear sought a declaration of non-liability under *Stowers*, the District Court was required grant its Motion for Judgment on the Pleadings and dismiss the Complaint in its entirety. As explained above, because Golden Bear sought a declaration of its obligations under the Policy, even if the District Court decided that Golden Bear could not seek a declaration as to the validity of the *Stowers* demand and dismissed that Count, the District Court could not have dismissed the Complaint entirely.

In support of their argument that Golden Bear could not seek a declaration as to whether the Demand Letter was a proper *Stowers* demand, Appellants cite several cases for the proposition that a tortfeasor cannot file a declaratory judgment action against a potential personal injury plaintiff to seek a declaration of non-liability for a tort claim. Most of the cases cited by Appellants involve a personal injury defendant that had no contractual relationship with the plaintiff and/or a district court's decision to stay or dismiss a declaratory judgment action under the factors set forth in *Brillhart v. Excess Ins. Co. of America* 316 U.S. 491 (1942).

In *Torch, Inc. v. LeBlanc*, a seaman was injured on the job. *Torch v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991). His employer filed a declaratory judgment in the Eastern District of Louisiana; the seaman subsequently filed a lawsuit in state court in Texas. *Id.* The Eastern District of Louisiana exercised its discretion in dismissing the declaratory judgment action in favor of the state action, and the Fifth Circuit affirmed. *Id. Torch* did not involve an insurer or any question of the interpretation and application of an insurance policy or other document; moreover, the district court cited a number of reasons in its determination to abstain, including the fact that the employer filed the lawsuit in the Eastern District of Louisiana to avoid being sued in state court in Texas. *Id.*

In *MH Sub 1, LLC v. FPK Services, LLC*, the district court held that the Declaratory Judgment Act was not a proper vehicle for a party to contest a claim for misappropriation of secrets, but further held that if the Declaratory Judgments Act was a proper vehicle, the district court would decline to exercise jurisdiction under *Brillhart*. *MH Sub 1, LLC v. FPK Services, LLC* 1:18-cv-834-RP, 2019 WL 13138139 (June 21, 2019); *see also, American Eurocopter LLC v. AIG Aviation, Inc.*, 4:09-CV-137Y, 2009 WL 10705171 (June 19, 2009) (helicopter manufacturer sought declaration that it was not liable for helicopter crash resulting in death of six passengers and injuries to three others; District Court held that prospective tort defendant could not use the Declaratory Judgment Act to seek a declaration of non-

liability, but further held that the court would decline to exercise jurisdiction based on its analysis of *Brillhart* factors).

None of the cases cited by the Appellants involves an insurer seeking a declaration as to its obligation to indemnify its insured. Moreover, the Fifth Circuit has explicitly permitted a potential tort-feasor to seek a declaration of non-liability on a specific issue related to tort liability. *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 386-87 (5th Cir. 2003). In *Sherwin-Williams*, this Court held that the district court properly found that a plaintiff paint manufacturer could seek, among other things, a declaration that, absent an identification by underlying plaintiffs that it sold the paint at issue, it could not be the proximate cause of damages relating to exposure to lead paint. *Id.* at 387. The district court then decided not to exercise its jurisdiction over the case for other reasons, a decision that the Fifth Circuit reversed as an abuse of discretion. *Id.* at 401. Similarly to *Sherwin-Williams*, here Golden Bear sought a declaration as to a discrete element of Appellants' *Stowers* claim.

Other cases cited by the Appellants are similarly unhelpful to their position. In *Ex-Im Freezers, J.V. v. Appalachian Ins. Co.*, the Fifth Circuit held that an insurer defendant could not recover attorney's fees under the Texas Declaratory Judgment Act because the *counterclaims* asserted by the insured were not the proper subject of declaratory judgment actions under the Texas Act. The Fifth Circuit did not opine on the propriety of the claims under the Federal Declaratory Judgment Act. 53 F.3d

1281, 1995 WL 295926 (5th Cir. Apr. 26, 1995). In *Bryant v. Optimized Process Designs, LLC*, another case not involving an insurer, the district court held that a defendant in a wrongful death action could not assert a counterclaim for declaratory judgment to prevent plaintiff from voluntarily dismissing its lawsuit in order to refile its case in state court and name a non-diverse defendant. No. 4:23-CV-03275, 2024 WL 844933 at *5 (S.D. Tex. Feb. 26, 2024).

Here, Golden Bear sought two declarations: (1) that it exhausted its Policy limits and owed no further duty to indemnify its insureds; and (2) that the Demand Letter did not constitute a valid *Stowers* demand. ROA.11-13. The Declaratory Judgment Act was a proper vehicle for both claims. Even if this Court disagrees as to the propriety of the second claim, however, the first is a long standing and generally accepted use of the Declaratory Judgment Act in the Fifth Circuit and other jurisdictions. Thus, the District Court properly denied Appellants' Motion for Judgment on the Pleadings.

## III. The District Court Did Not Abuse Its Discretion In Deciding This Case

A district court's decision to hear a declaratory judgment action or stay it in favor of a state court action is reviewed for abuse of discretion. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289 (1995).

Prior to filing their Answer with counterclaims, Appellants filed a Motion to Dismiss and/or Stay the Action. As explained above, Golden Bear properly sought a

declaration of its liability under the Policy, and the District Court had the authority to hear the case. Because Appellants' first motion to dismiss was filed prior to the time it asserted its coercive counterclaims, the District Court properly made its decision to hear the case under the broader standard articulated in *Brillhart.* Even under that standard, the District Court decided to hear the case. Appellants have not demonstrated that the District Court's decision was an abuse of discretion.

Appellants argue that the District Court abused its discretion by deciding not to abstain. They argue that all the applicable factors set forth in *Trejo* favor abstention, but do not explain how those factors favor abstention. And importantly, Appellants did not provide a discussion of how factors set forth in *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994), apply in their original abstention motion and/or their motion for reconsideration before the District Court beyond self-serving statements that Golden Bear must be forum shopping. ROA.113-123; ROA.201-204.

District Courts are vested with the unique discretion to determine whether to abstain from a declaratory judgment action, "because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp." *Wilton,* 515 U.S. at 289. Although a district court has "broader discretion to decline to hear a declaratory judgment action than it has in other kinds of actions, the district court's discretion is not wholly unfettered." *American Bankers Life Assurance Co. of Fl. v. Overton,* 128 Fed. Appx. 399, 401

(5th Cir. 2005). In deciding whether to abstain from a declaratory action properly before it, courts may consider a list of factors detailed by the Fifth Circuit in *Trejo*:

(1)  whether there is a pending state action in which all of the matters in controversy may be fully litigated;

(2)  whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;

(3)  whether plaintiff engaged in forum shopping in bringing the suit;

(4)  whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;

(5)  whether the federal court is a convenient forum for the parties and witnesses;

(6)  whether retaining the lawsuit would serve the purposes of judicial economy; and

(7)  whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the parties is pending [not at issue].

39 F.3d at 590-91.

Ultimately, the *Trejo* factors articulate three broader categories of consideration: (1) federalism, (2) fairness, i.e. whether "forum shopping" is occurring, and (3) efficiency. *See Sherwin-Williams*, 343 F.3d at 390-91. Appellee discussed the first six of the *Trejo* factors in its briefing to the District Court. Appellants, on the other hand, discussed only the pending state action requirement in detail, and then simply asserted that by filing its action, Golden Bear necessarily engaged in impermissible forum shopping to deprive Appellants of the advantages

of state court, and that it would be inequitable to allow Golden Bear to maintain its suit. R.121-122.

As Appellants note, Appellants did file an action in state court on June 21, 2023, almost a month after Golden Bear filed this action and the day before Appellants filed their motion to dismiss on abstention grounds. ROA.135-151; ROA.7; R.113-126. That action was not pending when Golden Bear filed the instant lawsuit. Nevertheless, this factor could weigh in favor of a stay or dismissal.

The other factors do not, however. The Fifth Circuit has made it clear that "[m]erely filing a declaratory judgment action in a federal court with jurisdiction to hear it, in anticipation of state court litigation, is not in itself improper anticipatory litigation or otherwise abusive 'forum shopping.'" *See Sherwin-Williams*, 343 F.3d at 391. Instead, "forum shopping" should be more carefully defined as a "category of federal declaratory judgment lawsuits filed for reasons improper and abusive, other than selecting a forum or anticipating related litigation." *Id*. "Improper and abusive" reasons might include a forum choice that provides a more favorable choice-of-law analysis, for example. *Id*. at 397-98.

Here, Golden Bear filed its declaratory judgment action in the Southern District of Texas, Houston Division. The District Court is located in the same city as the state court in which Appellants' later-filed action was pending. Because jurisdiction was based on diversity, the District Court was required to apply the

substantive law of the forum state. *See, e.g.*, *Wisznia Co., Inc. v. General Star Indem. Co.*, 759 F.3d 446, 448 (5th Cir. 2014). The issues before the District Court were not complicated or novel issues of state law. And Appellants made no attempt to identify any actual inequities they would suffer.

In contrast, Golden Bear argued to the District Court that it would face inequities in the event it was forced to litigate in state court. Golden Bear noted that it was an out of state insurance company, and two of the defendants were related to local, beloved and well-connected baseball stars.

Rather than discuss specific facts related to the majority of the *Trejo* factors, Appellants merely cited to two decisions from the Northern District of Texas, in which courts had determined that they would dismiss declaratory judgment actions and argued that these decisions should bind the District Court in this case. *Lexington Ins. Co. v. West Star Transport*, No. 5:16-cv-179-C, 2017 WL 3867770 (N.D. Tex. May 2, 2017); *Twin City Fire Ins. Co. v. Carpenter*, No. 3:21-CV-1077-G, 2021 WL 3172269 (N.D. Tex. July 26, 2021). They essentially ask this Court to create a *per se* rule that courts must abstain in any insurance case involving a potential *Stowers* claim. But the decision whether to decline jurisdiction is a factual determination that requires an examination of the specific circumstances of a particular case. *Wilton,* 515 U.S. at 289. The mere fact that certain judges have declined jurisdiction after

examining the *Trejo* factors in the cases before them is not binding on other courts, who likewise must examine the circumstances of the particular case before them.

Because the District Court did not abuse its discretion in hearing the case, the District's Court decision to hear the case should be affirmed.

## IV. The District Court Properly Held That The Demand Did Not State A Clear And Unambiguous Sum Certain

The Fifth Circuit reviews a grant of summary judgment *de novo*. *Davidson v. Fairchild*, 882 F.3d 180, 184 (5th Cir. 2018). Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the Court establish that no genuine issue exists as to any material fact, and that the moving party is entitled to judgment or partial judgment as a matter of law. Fed. R. Civ. Pro. 56(a) and (c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).

Appellants argue that the District Court erred in holding that the Demand Letter was not a demand within policy limits. As set forth below, that decision was not in error, and the District Court's decision should be affirmed.

Under the *Stowers* case, an insured has a cause of action against an insurer that negligently fails to settle a claim within policy limits when an excess judgment is later entered against the insured. *G.A. Stowers Furniture Co. v. American Indem. Co.*, 15 S.W.2d 544, 547-48 (Tex. Comm'n App. 1929, holding approved). The

insured bears the burden of first establishing "(1) the claim against the insured is within the scope of coverage, (2) the demand is within the policy limits, and (3) the terms of the demand are such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to an excess judgement." *Serger v. Yorkshire Ins. Co., Ltd.*, 503 S.W.3d 388, 395-96 (Tex. 2016). "Generally, a *Stowers* settlement demand must propose to release the insured fully in exchange for a stated sum of money, but may substitute 'the policy limits' for a sum certain." *American Physicians Ins. Exch. v. Garcia,* 876 S.W.2d 842, 848-49 (Tex. 1994). The demand must be clear and unambiguous in the amount sought, otherwise it does not trigger the obligations under *Stowers*. *American Guar. and Liability Ins. Co. v. ACE American Ins. Co.*, 990 F.3d, 842, 846-47 (5th Cir. 2021).

On October 11, 2019, counsel for Capel and Clemens sent the Demand Letter to counsel for Concrete Cowboy. In that letter on page 4, paragraph 1, which contains the heading "Settlement Demand," the Demand letter stated, "We propose to release your client fully in exchange for the payment of all policy limits of any and all insurance contracts." ROA.456. Appellants argue that this language is the same as "the policy limits." In so arguing, Appellants ignore the broadening language "all" before policy limits and the broadening phrase "of any and all insurance contracts." In other words, Appellants ask this Court to redraft the Demand Letter.

Appellants cite a number of cases for the proposition that a proper *Stowers* demand need not state a sum certain but can instead demand "the policy limits". None of those cases held that the language "all policy limits of any and all insurance contracts," is the same as "the policy limits" however, and therefore those cases are not supportive of Appellants' position. *See, e.g.*, *Garcia*, 876 S.W.2d at 848-849 (demand was for a set number that required stacking of policy limits, not "the policy limits"); *American Ins. Co. v. Assicurazioni Generali SpA*, 228 F.3d 409, 2000 WL 1056143 at *1 (5th Cir. July 24, 2000) (demand for "Payment of the sum of $986,000.00 or the remaining primary limits of your clients' insurance coverage, whichever is less" was a proper demand); *OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 841 F.3d 669, 678 (5th Cir. 2016) (noting that demand was a proper *Stowers* demand when it offered to release some but not all of the insureds; amount of demand was not at issue). Appellants can cite to no case in which a demand for "all policy limits of any and all insurance contracts" was held to be a sum certain.

Appellants further argue that Golden Bear failed to demonstrate that it lacked certainty as to the amount of the demand. It is Appellants' burden to demonstrate that the Demand Letter was a demand for a sum certain within Golden Bear's Policy limits, either because the Demand Letter included a specific number or the words "the policy limits." *Serger*, 503 S.W.3d at 395-96 (Tex. 2016). It is not Golden Bear's

burden to show that it believed the sum was uncertain, particularly in this case, in which the language of the demand is unquestionably uncertain.

Moreover, Appellants state, without any citation to the record, that Golden Bear and Concrete Cowboy "knew" that only the Golden Bear Policy provided coverage for the Underlying Lawsuit. It is not clear how Golden Bear's and/or Concrete Cowboy's knowledge of the available insurance could clarify the ambiguous language in the Demand Letter. But even assuming Golden Bear and/or its insured knew that no other insurance existed, that knowledge does not cure the Demand Letter's deficiency. There is no evidence in the record that Clemens and Capel knew that the Golden Bear Policy was the only policy of insurance at issue. Because the demand was phrased as "all policy limits of any and all insurance contracts," the demand was not clear and unambiguous. Indeed, Golden Bear could not be sure that, had it offered the remaining limits of the Policy, the offer would be accepted. Appellants' self-serving assertion is not sufficient to meet their burden of demonstrating that an issue of fact exists in order to avoid summary judgment. *Forsyth v. Barr*, 28 F.3d 1527, 1533 (5th Cir. 1994) ("unsubstantiated assertions are not competent summary judgment evidence.").

Permitting a claimant to make an unspecified demand such as "all policy limits of any and all insurance contracts" untethered to any insurer, or insurance policy early in a litigation and have such a demand qualify as a *Stowers* demand

would mean that an insurer could only protect itself from *Stowers* liability by tendering its policy limits in response to any demand. The Texas Supreme Court has rejected similar attempts to shift the burden under *Stowers* to insurers to make settlement offers. *See Garcia*, 876 S.W.2d 842, 850-52 (Tex. 1994).

Appellants next argue that the District Court erred in finding that the demand had to specifically take into account the fact that defense costs eroded the limits of the Policy. They argue that the amount demanded in the Demand Letter could be determined by reference to the Policy. They further argue that, because the Policy in this case specifies that the limits of liability would be reduced by payments made under the Assault and Battery Endorsement, the Demand Letter's demand for "all policy limits under any and all insurance contracts" necessarily meant "the assault and battery limit of $1 million reduced by coverage payments." Appellants Brief at 51. But the Demand Letter makes no reference at all to the Golden Bear Policy in the settlement demand. And this Court should reject Appellants' attempts to redraft the language of their own Demand Letter long after the fact.

The decision in *Westchester Fire Ins. Co. v. Admiral Ins. Co.* does not support Appellants' argument. 152 S.W.3d 172, 192 (Tex. App.—Fort Worth 2004, pet. denied). In *Westchester*, the claimant's letters demanded $1,000,000, the full limits of the primary policy. *Id.* There was also testimony, however, that at mediation, the attorney for the claimant offered to settle for the limits of the policy or "If it's not

$1,000,000, if its eroded down to 950 or 990 or whatever, then that's what we want." *Id.* at 193. In other words, there was testimony that the claimant made a demand for the remaining limits of the policy. Based on that testimony and other evidence, the court found that there was "more than a scintilla of evidence to raise a fact issue" regarding whether a settlement demand within limits had been made. *Id.* at 196. The court therefore reversed the directed verdict and remanded the case for trial. *Id.*

Unlike *Westchester Fire*, Appellants cite to no record evidence that would tend to demonstrate that they qualified the language in the Demand Letter. There was no reference within the demand that the case could be settled for the "limits of the primary insurance policy" or, here, the limits of the Golden Bear Policy, or even the remaining limits. Based on the demand wording, and for the reasons discussed above, Clemens and Capel's demand was not a clear and unambiguous sum certain within the limits of liability of the Limited Assault and Battery Coverage part at all, let alone the $1 million pre-eroded policy limit.

Appellants argue that requiring a demand acknowledge erosion by defense costs will thwart Texas's policy of encouraging early settlements, because a claimant can never know how much the policy has eroded. In their *amicus curiae* brief, the Texas Trial Lawyers Association elaborate on that argument, asserting that the District Court's decision makes it impossible for a claimant to ever make a valid *Stowers* demand in connection with a wasting limits policy, because the amount of

erosion of an insurance policy's limits is not discoverable, citing *In re Dana Corp.*, 138 S.W.3d 298, 303-04 (Tex. 2004).

These arguments misconstrue the District Court's holding. The District Court did not hold that the Demand Letter had to state the precise amount left on an eroding policy. Rather, the District Court held that the language "all policy limits from any and all insurance contracts" was not a sum certain, because it did not "provide any specificity regarding either Golden Bear's Policy, or the actual amount left within the Policy itself, let alone an eroding policy such as the one Golden Bear maintained." The Demand Letter could have demanded the "available limits of the primary policy" or "the remaining limits of the primary policy" or referred to the Golden Bear Policy in the demand itself. None of these possibilities would require a plaintiff to know the exact amount of any erosion. The District Court correctly found that a demand for "all policy limits of any and all insurance contracts" is not a clear and unambiguous sum certain. On its face, this is not a demand for a sum certain, regardless of whether a particular policy's limits of liability were eroding or not.

Because the District Court correctly held that the Demand Letter did not meet the requirements of a clear and unambiguous demand for a sum certain within policy limits required by *Stowers*, the grant of summary judgment should be affirmed.

**V.** **Because The District Court Did Not Rule On Golden Bear's Motion Regarding Whether A Reasonable Insurer Would Have Accepted The Demand, This Court Should Not Decide The Issue**

Finally, Appellants ask this Court to deny the portion of Golden Bear's Motion for Summary Judgment that sought a holding that no reasonable, prudent insurer would have accepted the demand. The District Court specifically declined to rule on this portion of Golden Bear's motion, because it was moot. "It is the general rule . . that a federal appellate court does not consider an issue not passed on below." *Humphries v. Elliott Co.*, 760 F.3d 414, 418 (5th Cir. 2014) (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (2014). Because the District Court did not consider this claim on merits, there is no appealable order. *Shanks v. AlliedSignal, Inc.* 169 F.3d 988 (5th Cir. 1999). In the unlikely event that this Court finds that the Demand Letter was for a sum certain and within limits, this Court should decline Appellants' invitation to rule on the portions of the underlying motions that the District Court did not decide.

## CONCLUSION

For the reasons set forth herein, this Honorable Court should affirm the District Court's judgment.

Respectfully submitted,

*/s/ George S. McCall*
George S. McCall
Sondra Sylva
Erin M. Turner
Phelps Dunbar, L.L.P.
2102 E. State Highway 114
Southlake, TX 76092
T: 817-722-9450
george.mccall@phelps.com

*Counsel for Plaintiff-Appellee Golden Bear Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2024, the foregoing document was served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure and 5th Cir. R.25.2.5, on all registered counsel of record, and has been transmitted to the Clerk of Court.


*/s/    George S. McCall*
George S. McCall

Counsel for Plaintiff-Appellee Golden Bear Insurance Company

## CERTIFICATE OF COMPLIANCE WITH RULE 32

1.    This brief complies with the type-volume limit of Fed.R.App.P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed.R.App.P. 32(f), and 5th Cir. R. 32.1: this document contains 8,235 words.

2.    This document complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and 5th Cir. R. 32.1 and the type-style requirements of Fed.R.App.P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft Office 365 in Times New Roman 14-point type face.

*/s/ George S. McCall*

George S. McCall

Counsel for Plaintiff-Appellee Golden Bear Insurance Company