# No. 24-20332

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

Golden Bear Insurance Company,
*Plaintiff – Appellee*
v.
34th S&S, L.L.C., doing business as Concrete Cowboy; Kacy Clemens; Daniel
Joseph Wierck; Conner Capel,
*Defendants - Appellants*

**On Appeal from**
United States District Court for the Southern District of Texas
4:23-CV-1933

## APPELLEE'S RECORD EXCERPTS

SUBMITTED BY:

George S. McCall
Sondra S. Sylva
Erin M. Turner
PHELPS DUNBAR, L.L.P.
2102 E. State Highway 114
Southlake, TX 76092
Telephone: (817) 488-3134
Facsimile: (817) 488-3214
george.mccall@phelps.com
sondra.sylva@phelps.com
erin.turner@phelps.com

*Counsel for Plaintiff-Appellee*

# TABLE OF CONTENTS

| Document | Record Citation | Tab |
|---|---|---|
| Original Complaint for Declaratory Judgment | ROA.7-14 | 1 |
| Excerpts from Golden Bear Insurance Policy | ROA.17, ROA.24-25, ROA.68-69, ROA.75, ROA.84-85 | 2 |
| October 11, 2019 Demand Letter | ROA.126-130 | 3 |

# TAB 1

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GOLDEN BEAR INSURANCE | § | |
| COMPANY | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | CIVIL ACTION NO. 4:23-cv-1933 |
| V. | § | |
| | § | |
| 34ᵗʰ S&S, LLC D/B/A | § | |
| CONCRETE COWBOY; | § | |
| DANIEL JOSEPH WIERCK; | § | |
| KACY CLEMENS;  AND CONNER | § | |
| CAPEL, | § | |
| | § | |
| **Defendants.** | § | |

## ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Golden Bear Insurance Company ("Golden Bear" or "Plaintiff") files this Original Complaint and Request for Declaratory Judgment seeking a determination that the insurance policy at issue does not provide coverage in connection with a final judgment in excess of policy limits.

## NATURE OF THE ACTION

1.      This is an action for declaratory relief pursuant to 28 U.S.C. § 2201, in which Golden Bear seeks an adjudication of its rights and obligations under a Commercial General Liability Policy (the "Policy"). Plaintiff seeks a declaration that it has no obligation under the Policy to further indemnify its insureds against a final judgment entered in favor of Clemens and Capel, resulting from an alleged altercation at the insureds' restaurant and bar premises (the "Underlying Lawsuit").

2.      Declaratory judgment is appropriate because Defendants have requested Plaintiff pay the full judgment, which is in excess of the available policy limits. Plaintiff seeks a declaration

**COMPLAINT FOR DECLARATORY JUDGMENT – Page 1**

that it has no obligation to pay any part of the judgment in excess of the available policy limits, which have already been paid to Clemens and Capel.

## THE PARTIES

3.      Plaintiff, Golden Bear, is a corporation organized and existing under the laws of the State of California, with its principal place of business in Stockton, California.

4.      Defendant, 34th S&S, LLC d/b/a Concrete Cowboy ("Concrete Cowboy"), is a Texas corporation whose principal office is in Harris County, Texas, and may be served with process by serving its registered agent, CT Corporation System, at 1999 Bryan St, Ste. 900, Dallas, Texas 75201-3140.

5.      Defendant, Daniel Joseph Wierck ("Wierck"), is an individual residing in Harris County, Texas, and may be served with process at his usual place of abode at 811 Buffalo Park Dr. PH 2305, Houston. Texas 77019, or wherever he may be found.

6.      Defendant, Kacy Clemens ("Clemens"), is an individual residing in Montgomery County, Texas, and may be served with process at his usual place of abode at 1715 Mission Oaks Ct., Conroe, Texas 77304, or wherever he may be found.

7.      Defendant, Conner Capel ("Capel"), is an individual residing in Montgomery County, Texas, and may be served with process at his usual place of abode at 7910 Summit Trail Ln., Porter, Texas 77365, or wherever he may be found.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between citizens of California and citizens or subjects of a foreign state.

9.      This Court has personal jurisdiction over the Defendants because this action arises

**COMPLAINT FOR DECLARATORY JUDGMENT – Page 2**

out of their specific contacts with Texas and they have continuous and systematic contacts with Texas such that exercising specific and general jurisdiction does not offend traditional notions of fair play and substantial justice.

10.     Venue is proper under 28 U.S.C. § 1391(a)(2) because a substantial portion of the events giving rise to this claim occurred in this judicial district.

## FACTUAL BACKGROUND

### *The Policy*

11.     Golden Bear issued Commercial General Liability Policy No. GBL 10972 to 34th S&S, LLC dba: Concrete Cowboy Houston. The Policy was effective from September 28, 2018 to September 28, 2019, and had a policy limit of $1,000,000, a limit that erodes with the payment of defense costs. A true and accurate copy of the Policy is attached hereto as Exhibit 1, and incorporated by reference.

12.     Concrete Cowboy and Wierck ("Wierck") are insureds under the Policy, and collectively referred to herein as "insureds".

13.     Pursuant to the Policy terms (**LIMITED ASSAULT & BATTER COVERAGE With Defense Inside Limits**), the Policy will indemnify the insureds for all sums which the insureds becomes legally obligated to pay as damages because of "bodily injury" to which the Policy applies.

14.     The Policy also obligates Golden Bear to defend the insureds against any suit seeking such damages, up to the limits of the Policy.

15.     Golden Bear's duty to investigate, defend and indemnify its insureds ends when it has used up its applicable limit of insurance by payment of costs, fees, expenses, or indemnity.

16.     When the applicable limit exhausts from the payment of any judgment and/or

**COMPLAINT FOR DECLARATORY JUDGMENT – Page 3**

defense costs and fees, the insured agrees to assume payment for all further costs and expenses incurred, including attorney fees, from the date of the payment that exhausts the policy limit until the claim, demand or suit is resolved.

17.     Golden Bear has no duty to defend or indemnity the insureds or otherwise resolve any claim(s) pending against the insureds after exhaustion of the applicable limit.

18.     The Combined Assault & Battery Aggregate Limit is the most Golden Bear will pay for coverage regardless of the number of claims or "suits" brought against the insureds arising out of more than one "occurrence" and/or "common cause."

### *The Underlying Lawsuit*

19.     The underlying personal injury lawsuit arises from an altercation at Concrete Cowboy, a Houston restaurant and bar, on New Year's Eve in 2018. Clemens and Capel (patrons of Concrete Cowboy) sued Concrete Cowboy and one of its owners, Wierck, for physical injuries they claim were sustained during the altercation at the bar.

20.     The Underlying Lawsuit included causes of action for negligence, assault, negligent security, and gross negligence. A true and accurate copy of the Fourth Amended Original Petition, the operative pleading at the time of trial of the Underlying Lawsuit, is attached hereto as Exhibit 2, and incorporated herein by reference.

21.     Pursuant to Concrete Cowboy and Mr. Wierck's request, Golden Bear agreed to and did defend its insureds in the Underlying Lawsuit, with counsel of their choosing.

22.     Between February 1, 2021 to February 5, 2021, Clemens and Capel presented at trial claims against Concrete Cowboy for assault, aggravated assault, negligence, premises liability and gross negligence. Against Wierck, Clemens and Capel presented assault, aggravated assault, negligence, and gross negligence claims.

**COMPLAINT FOR DECLARATORY JUDGMENT** – **Page 4**

23.     Following the five-day trial, the case was submitted to the jury on each of the claims. The jury returned a verdict against Concrete Cowboy and Wierck and awarded Clemens and Capel damages totaling $3,200,000. Specifically, the jury found that (i) Wierck was liable for negligence but not liable for assault or gross negligence and (ii) Concrete Cowboy was liable for assault, negligence, and premises liability but not liable for gross negligence.

24.     The trial court signed a Final Judgment on April 26, 2021 in favor of Clemens and Capel which was modified to omit an award for future physical pain to Defendant Conner Capel and add an award for past and future disfigurement.

25.     On behalf of the insureds, Golden Bear retained appellate counsel to file an appeal. At the instruction of the insureds, the appeal was dismissed.

26.     Golden Bear tendered the balance of its policy limits to Clemens and Capel with a request that they execute a Partial Release of Judgment.

### *Stowers Claim*

27.     Concrete Cowboy and Wierck have sought indemnification under the Policy for the judgment entered in the Underlying Lawsuit. While Golden Bear does not dispute that indemnity coverage is owed, the amount of indemnity coverage to which the insureds are entitled is a matter of contention among all of the parties to this lawsuit.

28.     Counsel for Clemens and Capel maintain that the full amount of the judgment should be paid by Golden Bear and also that it is liable to Defendants for extra-contractual damages under *GA Stowers Furniture Co. v. American Indemnity Co.*, 15 S.W.2d 544 (Tex. Comm'n App. 1929, holding approved).

### CAUSES OF ACTION

**COUNT ONE (Request for Declaratory Relief – Eroding Available Policy Limits)**

**COMPLAINT FOR DECLARATORY JUDGMENT** – Page 5

29.     Plaintiff incorporates herein by reference paragraphs 1 through 27 of this Complaint as though specifically alleged herein.

30.     The limits of coverage available to satisfy the final judgment are eroded by payment of defense fees and expenses.

31.     Plaintiff tendered the balance of the policy limits to Clemens and Capel, exhausting the available policy limits.

32.     Plaintiff asks this Court to enter a declaratory judgment under 28 U.S.C. § 2201(a), declaring that it has no obligation to indemnify Concrete Cowboy and/or Wierck for any sums in excess of the available policy limits towards the final judgment. This Court's declaration shall have the force and effect of a final judgment or decree. 28 U.S.C. § 2201(a).

### COUNT TWO (Request for Declaratory Relief – *Stowers* Liability)

33.     Plaintiff incorporates herein by reference paragraphs 1 through 32 of this Complaint as though specifically alleged herein.

34.     To succeed on a Stowers claim under Texas law, the plaintiff must establish: (i) unconditional demand (offers a full and final release for the insured); (ii) within the policy limits; (iii) ordinarily-prudent insurer would accept demand, considering the likelihood and degree of the insured's potential exposure to an excess judgment; and (iv) the claims are covered by the policy. *See American Physicians Insurance Exchange v. Garcia*, 876 S.W.2d 842 (Tex. 1994).

35.     Golden Bear maintains that neither Concrete Cowboy and Wierck, nor Clemens and Capel as the purported assignee holder of a *Stowers* claim, can establish these elements.

36.      At no time did Clemens and Capel either individually, or together, make a settlement demand upon Concrete Cowboy and/or Wierck which complied with the requirements of *Stowers*.

37.     Under these circumstances, Plaintiff respectfully requests this Court to enter a declaratory judgment under 28 U.S.C. § 2201(a), declaring that it has no extra-contractual liability

**COMPLAINT FOR DECLARATORY JUDGMENT** – **Page 6**

to any of the Defendants in this cause of action because Clemens and Capel did not make a settlement demand upon the insureds which complied with the requirements of *Stowers*. This Court's declaration shall have the force and effect of a final judgment or decree. 28 U.S.C. § 2201(a).

## COUNT THREE (Attorneys' Fees)

38.     Plaintiff incorporates herein by reference paragraphs 1 through 37 of this Complaint as though specifically alleged herein.

39.     It has been necessary for Plaintiff to retain the law firm of Faegre Drinker Biddle & Reath, LLP to represent it in this lawsuit. Plaintiff has agreed to pay Faegre Drinker a reasonable sum for attorneys' fees incurred in representing them in this matter. Plaintiff is also entitled to recover their reasonable and necessary attorneys' fees pursuant to Texas Civil Practice and Remedies Code §38.001 and 37.009.

## <u>CONCLUSION</u>

Pursuant to 28 U.S.C. § 2201(a) and Rule 57 of the Federal Rules of Civil Procedure, Golden Bear Insurance Company respectfully requests this Court to enter a declaratory judgment as follows and to grant any other and further relief as this Court deems just:

1.     That this Court determine and adjudicate the rights and liabilities of the parties with respect to the Policy;

2.     That this Court declare, pursuant to Count One of this Complaint, that Golden Bear has no duty to further indemnify Concrete Cowboy and/or Wierck;

3.     That this Court declare, pursuant to Count Two of this Complaint, that Golden Bear has no duty to pay any sum to Clemens and Capel as potential judgment creditors of Concrete Cowboy and/or Wierck for any amount of the Judgment in the Underlying Lawsuit in excess of the balance of the policy limits that were tendered to Clemens and Capel;

4.     That this Court award to Golden Bear, pursuant to Count Three of this Complaint, its reasonable and necessary attorneys' fees incurred in representing Plaintiff in connection with

<u>**COMPLAINT FOR DECLARATORY JUDGMENT**</u> **– Page 7**

this lawsuit; and

5.      That this Court further award to Golden Bear its costs of court.


Respectfully submitted,


**FAEGRE DRINKER BIDDLE & REATH LLP**

By: */s/ George S. McCall*

George S. McCall
TX Bar No. 13344800
george.mccall@faegredrinker.com
Sondra S. Sylva
TX Bar No. 24033017
sondra.sylva@faegredrinker.com

1717 Main Street
Suite 5400
Dallas, TX  75201-7367
Telephone:        469-357-2500
Facsimile:        469-327-0860
ATTORNEYS FOR GOLDEN BEAR
INSURANCE COMPANY

US.357704092.01

24-20332.14

**TAB 2**



# Golden Bear Insurance Company

POST OFFICE BOX 271
STOCKTON, CALIFORNIA 95201

## COMMERCIAL GENERAL LIABILITY DECLARATIONS

| Policy Number | GBL 10972 |
|---|---|
| Renewal of Number | New |

| Named Insured and Mailing Address | Producer Name and Mailing Address |
|---|---|
| **34th S&S, LLC dba: Concrete Cowboy Houston**<br>**P. O. Box 190328**<br>**Dallas, TX 75219** | **Worldwide Facilities, LLC**<br>**7720 N. 16th Street, Suite 180**<br>**Phoenix, AZ 85020** |

| POLICY PERIOD | From: September 28, 2018 | To: September 28, 2019 | Term: Annual |
|---|---|---|---|

12:01 A.M. Standard Time at the address of the Named Insured as stated herein.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

### LIMITS OF INSURANCE

| | |
|---|---|
| General Aggregate Limit (Other than Products-Completed Operations) | $2,000,000. |
| Products – Completed Operations Aggregate Limit | $1,000,000. |
| Personal and Advertising Injury Limit | $1,000,000. |
| Each Occurrence Limit | $1,000,000. |
| Damage To Premises Rented to You | $50,000. |
| Medical Expense Limit | Excluded. ANY ONE PERSON |
| **Deductible GL per claim** | $2,500 |
| **Deductible LL per claim** | $2,500 |
| Liquor Liability Limit General Aggregate/Each Common Cause | $1,000,000/$1,000,000. |

### DESCRIPTION OF BUSINESS AND LOCATION PREMISES

Form of Business:  Limited Liability Company
Business Description:  Bar/Tavern
Locations of All Premises You own, Rent or Occupy:  Loc 1) 5317 Washington Avenue, Houston, TX 77007

### PREMIUM

| Classification | Code No. | Premium Basis | Rate Pr/Co | Rate All Other | Advanced Premium Pr/Co | Advanced Premium All Other |
|---|---|---|---|---|---|---|
| **Restaurants** | 16915 | **Gross Sales**<br>$ ▮ | ▮ | ▮ | ▮ | |
| **GBR 257 02 14 - GL** | | **50%** | | | | ▮ |
| **On-Sale General for Public Premises** | 48 | **Liquor Sales**<br>$ ▮ | | ▮ | | ▮ |
| **GBR 257 02 14 - LL** | | **70%**<br>**Adjustable** | | | | ▮ |
| **Blanket Additional Insured –**<br>**CG 2010 07-04** | | | | | | ▮ |

| | | |
|---|---|---|
| Fully Earned Policy Fee | | ▮ |
| Inspection Fee | | |
| Total Advance Premium | | ▮ |

25% of the Advanced Premiums are Fully Earned at Policy Inception

This declaration together with the coverage form(s) and any applicable endorsements listed in the attached Forms Inventory, form a part of and complete the above numbered policy.  See Forms Inventory GBR-FI-EXT 08 99

Issue Date: **January 25, 2019  sm**

24-20332.17
Clemens 000001

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**GBR 257 02/14**

# LIMITED ASSAULT & BATTERY COVERAGE
## With Defense Inside Limits

**This endorsement modifies your policy under the following:**

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART

In consideration of the additional premium paid, we agree to afford coverage as stated below:

A.  The specific coverage excluded under GBR 212 (02/14) is reinstated subject to the following terms, conditions and the limits of insurance stated below.

    1.  We will pay no more than the applicable limit set forth below for sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" for coverage excluded under GBR 212 (02/14). Defense fees and costs are also paid from and reduce the applicable limit set forth below. The applicable limit in this form is the most we will pay regardless of:

        i.  The amount of the defense costs and fees;

        ii.  The amount of any demand for indemnity;

        iii.  The number of insureds;

        iv.  The number of claims or "suits" brought against you, or

        v.  The limits stated in the Declarations.

    2.  Our duty to investigate, defend and indemnify you will end when we have used up the applicable limit of insurance set forth below by payment of costs, fees, expenses, or indemnity.

    3.  When the applicable limit shown below exhausts from the payment of any claim, judgment, settlement, and/or defense costs and fees, you agree to take over the further handling of the claim or suit and to assume payment for all further costs and expenses incurred, including attorney fees, from the date of the payment that exhausts the policy limit until the claim, demand or suit is resolved.

    4.  We will have no duty to defend or indemnify you or otherwise resolve any claim(s) or "suit"(s) pending against you after exhaustion of the applicable limit. In this event, you agree to timely stipulate to any motion or application necessary for the withdrawal of insurer-appointed counsel.

B.  Limits:

| | |
|---|---|
| Commercial General Liability<br>Assault & Battery Each "Occurrence" | $1,000,000 |
| Liquor Liability<br>Assault & Battery Each "Common Cause" | $1,000,000 |
| "Combined Assault & Battery Aggregate" | $1,000,000 |

The limits above are not in addition to the limits stated in the Declarations. However, all payments made pursuant to coverage extended under this endorsement will also reduce the applicable Limit of Insurance shown in the Declarations.

The "Combined Assault & Battery Aggregate Limit" is the most we will pay for coverage under this endorsement regardless of the number of claims or "suits" brought against you arising out of more than one "occurrence" and/or "common cause."

*Page 1 of 2*

"Common Cause" means any claim, demand, or "suit" for injuries sustained by one or more persons as a result of the providing of alcoholic beverages.

All other terms, conditions, exclusions, limitations and definitions of this policy remain in full force and unchanged.

*Page 2 of 2*

COMMERCIAL GENERAL LIABILITY
CG 00 01 12 07

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties, Inc., 2006

24-20332.68
Clemens 000052

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2006

24-20332.69
Clemens 000053

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   **a.** All expenses we incur.

   **b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   **c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   **d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   **e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

   **f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   **g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

   These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   **a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   **b.** This insurance applies to such liability assumed by the insured;

   **c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   **d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   **e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   **f.** The indemnitee:

   **(1)** Agrees in writing to:

   **(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

   **(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

   **(c)** Notify any other insurer whose coverage is available to the indemnitee; and

   **(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

   **(2)** Provides us with written authorization to:

   **(a)** Obtain records and other information related to the "suit"; and

24-20332.75
Clemens 000059

COMMERCIAL GENERAL LIABILITY
CG 00 33 12 07

# LIQUOR LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – LIQUOR LIABILITY COVERAGE

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance does not apply. We may, at our discretion, investigate any "injury" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

  **b.** This insurance applies to "injury" only if:

    **(1)** The "injury" occurs during the policy period in the "coverage territory"; and

    **(2)** Prior to the policy period**,** no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "injury" or claim, knew that the "injury" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "injury" occurred, then any continuation, change or resumption of such "injury" during or after the policy period will be deemed to have been known prior to the policy period.

  **c.** "Injury" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "injury" or claim, includes any continuation, change or resumption of that "injury" after the end of the policy period.

  **d.** "Injury" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "injury" or claim:

    **(1)** Reports all, or any part, of the "injury" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "injury"; or

    **(3)** Becomes aware by any other means that "injury" has occurred or has begun to occur.

**2. Exclusions**

  This insurance does not apply to:

  **a. Expected Or Intended Injury**

    "Injury" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

  **b. Workers' Compensation And Similar Laws**

    Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

© ISO Properties, Inc., 2006 ☐

24-20332.84
Clemens 000068

**c. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the "injury".

**d. Liquor License Not In Effect**

"Injury" arising out of any alcoholic beverage sold, served or furnished while any required license is not in effect.

**e. Your Product**

"Injury" arising out of "your product". This exclusion does not apply to "injury" for which the insured or the insured's indemnitees may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

**f. Other Insurance**

Any "injury" with respect to which other insurance is afforded, or would be afforded but for the exhaustion of the limits of insurance.

This exclusion does not apply if the other insurance responds to liability for "injury" imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage.

**g. War**

"Injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**SUPPLEMENTARY PAYMENTS**

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**1.** All expenses we incur.

**2.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**3.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**4.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**5.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**6.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

**7.** Expenses incurred by the insured for first aid administered to others at the time of an event to which this insurance applies.

These payments will not reduce the limits of insurance.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

© ISO Properties, Inc., 2006

24-20332.85
Clemens 000069

**TAB 3**

NICK C.  NICHOLS, P.C. ++
RANDALL O. SORRELS, P.C.*+
BENNY AGOSTO, JR, P.C.*
MUHAMMAD S. AZIZ, P.C.*
BRANT J. STOGNER, P.C.*

———

IMRANA MANZANARES, R.N., J.D.
KELLY M. WOODS
MICHELLE A. CIOLEK
JONATHAN D. SNEED
CIRO J. SAMPERI
JENNIFER O'BRIEN STOGNER**
ANGELINA WIKE
LENA B. LAURENZO
ALEXANDRA L. FARIAS-SORRELS**
KARL P. LONG
JASON F. MURIBY

**LAW OFFICES**

# ABRAHAM, WATKINS, NICHOLS, SORRELS, AGOSTO & AZIZ

**800 COMMERCE STREET**
**HOUSTON, TEXAS 77002-1776**
**(713) 222-7211**
**FAX (713) 225-0827**
**1-800-870-9584**
www.abrahamwatkins.com

FRANK T. ABRAHAM
(1924-2004)

———

W. W. WATKINS
(1920-1987)

———

*BOARD CERTIFIED: PERSONAL INJURY TRIAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

**OF COUNSEL

+BOARD CERTIFIED: CIVIL TRIAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

++RETIRED PARTNER

October 11, 2019

**<u>VIA E-SERVICE</u>**

Claire W. Parsons
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, L.L.P.
909 Fannin Street, Suite 3300, Houston, Texas 77010
Phone: 713-353-2000
Fax: 713-785-7780
Email: Claire.Parsons@wilsonelser.com

> Re:   *Kacy Clemens and Conner Capel v. 34th S&S, LLC d/b/a Concrete Cowboy* and *John Paul Austin v. 34th S&S LLC d/b/a Concrete Cowboy*; Cause No. 2019-07278; In the District Court of Harris County, Texas, 113th Judicial District
>
> Date of Loss:   January 1, 2019
> Your Client/Insured:  34th S&S, LLC d/b/a Concrete Cowboy Houston
> Policy No.:   GBL 10972

Dear Ms. Parsons,

As you know, the undersigned represent Kacy Clemens, Conner Capel, and John Paul Austin with regard to claims for the injuries and damages they sustained after they were violently attacked by one or more employees or agents of 34th S&S, LLC d/b/a Concrete Cowboy while they were patrons at your client's bar on or about January 1, 2019. The purpose of this letter is to attempt to settle these claims without the necessity of incurring any additional expenses.

This letter is a privileged and confidential offer to compromise pursuant to TEXAS RULE OF EVIDENCE 408 and is intended solely for settlement purposes. All statements set forth herein are made without prejudice and are intended for settlement purposes only, and this is a time-limited demand. This demand is to settle claims against your client, 34th S&S, LLC d/b/a Concrete Cowboy, a named insured under the insurance policy produced in the above-referenced case, which is within the scope of coverage; and the terms of this demand are such that an ordinary and prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to an excess judgment. This is a time-limited demand.

24-20332.126

This letter is commonly referred to as a *Stowers* demand letter. *See Stowers Furniture Co. v. American Indem. Co.*, 15 S.W.2d 544 (Tex. Comm'n App. 1929, holding approved).

## FACTS

On or about January 1, 2019, Kacy Clemens, Conner Capel (collectively, "Plaintiffs"), Ryan Capel, and Ashton Wilson, were attending a New Year's Eve party at the bar known as Concrete Cowboy, located at 5317 Washington Avenue, Suite B, Houston, Texas 77007. Ashton and Conner had just returned from outside the club where they were talking to a policeman because Ashton had lost her phone and they were trying to find it. As the pair walked back in, they ran into Kacy, and Kacy and Ashton decided to order a drink. Conner was standing behind Kacy near the back-right corner of the club when a bouncer approached and aggressively told Conner to move out of the way. Conner complied, but apparently not to the liking of the bouncer, who grabbed Conner to throw him out of the bar. A bouncer also told Kacy to move out of the way while he was standing at the bar trying to order a drink. Kacy also complied, continued ordering the drink, then turned around to see Conner in an altercation with the bouncer. Without warning or provocation, other bouncers joined in and began violently attacking Kacy and Conner as they dragged the young men out of the bar. Police called to the scene arrested one of the bouncers for assault and found no evidence that Plaintiffs were intoxicated.

That same night, John Paul Austin ("Intervenor") and his girlfriend, Sarah Hardy, were invitees and patrons at Concrete Cowboy, having arrived sometime around 10:30 p.m. While there, John Paul and Sarah danced for over an hour. Around 12:30-12:40 a.m., John Paul and Sarah were dancing together on the far side of the bar opposite the main entrance (approximately within 5 feet from the edge of the bar and in between it and several leather wrapped couches/club style seating that were arranged for table service along the wall) when, without warning or provocation of any kind, John Paul was unexpectedly and violently struck in the face with a fist, put in a choke hold, and dragged away from the bar by one or more "bouncers" or employees of Concrete Cowboy before being thrown, face first, onto the concrete ground outside and near the entrance. Sarah was frantically crying and following as the bouncer dragged John Paul outside. Once outside, John Paul was barely conscious as a "Good Samaritan" patron of the bar attempted to call an Uber to help John Paul and Sarah escape as soon as possible. However, Sarah was able to call a Lyft driver who picked the couple up and took them to John Paul's home before John Paul was then taken to the emergency room at St. Luke's Hospital.

## LIABILITY

Your client's liability in this matter is clear. Pursuant to the doctrine of *respondeat superior*, Concrete Cowboy is vicariously liable for the conduct of its employees, who were acting in the course and scope of their employment as bouncers for Concrete Cowboy when they violently assaulted Plaintiffs and Intervenor. Concrete Cowboy is also directly liable for Plaintiffs' and Intervenor's injuries and damages for negligently and/or recklessly: (1) failing to keep patrons safe from being assaulted by Concrete Cowboy employees while on the premises; (2) failing to use ordinary care to ensure its patrons are safely removed from the premises by Concrete Cowboy employees; (3) failing to properly train its employees on safe methods of removing patrons from the premises; (4) failing to use ordinary care to avoid using excessive force to remove patrons from the premises; and (5) failing to use ordinary care in the screening, investigating, hiring, retaining,

and supervising of competent or unfit employees.

DAMAGES

As a direct and proximate result of the assault by Concrete Cowboy's employees or agents, John Paul sustained an orbital fracture to his left eye, a concussion, broken enamel on his maxillary central incisor tooth, and a series of scrapes and abrasions to his face and hands as a result of being thrown on the ground.  He also suffered significant emotional trauma, including embarrassment and reputational damage from subsequently arriving to work with the injuries to his face. He also subsequently experienced delayed mental function as a result of his concussion along with frequent headaches and fatigue.

As a direct and proximate result of the assault by Concrete Cowboy's employees or agents, Plaintiffs suffered physical injuries including bruising, swelling, and stiffness in their elbows, ribs, and neck. Conner sustained significant head trauma, including a bleeding gash on his forehead where he was struck with a flashlight while the bouncers dragged him out of the bar:



Plaintiffs were mentally and emotional traumatized by the incident itself and the impact it would have on their careers. Kacy and Conner, both professional baseball players, were forced to suspend training as a result of their injuries from the incident and they worried about whether they would be healthy enough to practice for the upcoming spring training. Plaintiffs also worried about what impact the incident would have on their reputations within their organizations and on their futures in baseball.

24-20332.128

**S<small>ETTLEMENT</small> D<small>EMAND</small>**

The purpose of this letter is to attempt to reach an amicable settlement with regard to the claims for injuries and damages sustained by Kacy Clemens, Conner Capel, and John Paul Austin, as a result of the assault by employees or agents 34th S&S, LLC d/b/a Concrete Cowboy that occurred on or about January 1, 2019.

1. **Terms and Release**.  On behalf of Kacy Clemens, Conner Capel, and John Paul Austin, we hereby unconditionally offer to settle all claims that can be brought by Kacy Clemens, Conner Capel, and John Paul Austin, against your client 34th S&S, LLC d/b/a Concrete Cowboy as a result of the injuries and damages they sustained as a result of the assault by employees or agents 34th S&S, LLC d/b/a Concrete Cowboy that occurred on or about January 1, 2019. We propose to release your client fully in exchange for the payment of all policy limits of any and all insurance contracts.

2. **Liens**.  In exchange for the payment of the policy limits referenced in the preceding paragraph, we will provide a full release of any and all liens.

3. **Coverage and Duty**.  The insurance policy issued to 34th S&S, LLC d/b/a Concrete Cowboy covers these claims, the liability in this case of 34th S&S, LLC d/b/a Concrete Cowboy is clear, and an ordinarily prudent insurer would accept this offer of settlement.

4. **Notice and Control**.  In the event that the consent of 34th S&S, LLC d/b/a Concrete Cowboy is necessary to trigger the insurer's duty to settle, pursuant to *Rocor International, Inc. v. National Union Fire Insurance Company of Pittsburgh, PA*, 77 S.W.3d 253 (Tex. 2002), then we hereby request that you fully inform 34th S&S, LLC d/b/a Concrete Cowboy of the same, and that 34th S&S, LLC d/b/a Concrete Cowboy provide the insurer(s) with written consent.

5. **Time**.  To give you a reasonable time to evaluate and respond to this demand, I will keep open this offer to settle within policy limits until **October 25, 2019**; *this offer will expire at **5:00 o'clock p.m. on October 25, 2019**, if it is not accepted before that date and time*.

6. **Intent**.  It is the express intent of this letter to provide a demand under the *Stowers* Doctrine. We hereby request that, if you or your insured contend that this demand fails to meet any of the requirements of *Stowers* and its progeny, you promptly point out each claimed failure, in writing, so that we may address any defect before the expiration of the time limit set forth in the preceding paragraph.

24-20332.129

Should you have any questions or concerns, please feel free to call my office. I await your response.

Very truly yours,

*/s/ Randall O. Sorrels*
Randall O. Sorrels

*/s/ Bobby Lapin (w/ permission)*
Bobby Lapin

24-20332.130

**Certificate of Service**

I hereby certify that on October 23, 2024, the foregoing document was served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure and 5th Cir. R.25.2.5, on all registered counsel of record, and has been transmitted to the Clerk of Court.

*/s/ George S. McCall*
George S. McCall